UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

KENNETH FORD,

                          Plaintiff,

   -against-                                                         1:06-CV-1227 (LEK)

MICHAEL J. ASTRUE,
*Commissioner of Social Security*,

                          Defendant.

## **MEMORANDUM-DECISION AND ORDER**

**I.**    **INTRODUCTION**

In January of 2004, Plaintiff Kenneth Ford filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act, alleging that he had been unable to work since December 1, 2001. The Commissioner of Social Security denied Plaintiff's application.

Plaintiff, acting through his attorney, commenced this action on October 6, 2006, by filing a Complaint in the United States District Court for the Northern District of New York. Compl. (Dkt. No. 1). Plaintiff seeks judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons that follow, the Commissioner's findings are affirmed and Defendant's Motion for judgment on the pleadings is granted.

**II.**    **BACKGROUND**

At the time the ALJ's decision was issued, Plaintiff was a 40-year old individual with an 11th grade education; he received his GED in 1989. R. 17, 76.[1] He had previously been employed

---

[1] Citations to the underlying administrative record are designated as "R."

as a pizza maker, food prep worker, and pizza deliveryman. R. 17, 80. Plaintiff alleged that he became disabled on December 31, 2001 due to a combination of impairments. R. 17, 70. He has a history of low back pain resulting from a back and neck injury in 1992 and a history of head trauma sustained when he was 18 years old. R. 227. In 1998, Plaintiff's then-treating chiropractor, Robert Otten, DC, assessed him as having a "marked to moderate disability" in connection with a Workers' Compensation hearing. R. 153. No medical records exist prior to the expiration of claimant's insured status for DIB on December 31, 2001, the alleged onset date. R. 72-73, 82-83. A letter from Karyn Dornemann, DC, dated March 17, 2004 indicates that she treated Plaintiff prior to August 6, 2001 for a work-related injury and diagnosed brachial neuritis and lower back pain/lumbosacral joint disorder. R. 155. Because she had not seen Plaintiff in almost three years, however, she was unable to provide an assessment of his physical capacity in support of his application for SSI and DIB benefits. R. 155. Plaintiff's primary care physican, Elizabeth Howard, D.O., provided records beginning on January 22, 2004 when Plaintiff made no report of back pain. R. 215. At that point, Dr. Howard assessed Plaintiff with sinusitis, infection of the left eye, depression/anxiety, drug and alcohol abuse by history, and joint pain. R. 215. Dr. Howard's progress notes assess Plaintiff with "diffuse arthralgias" due to Plaintiff's complaints of pain in his hips, knees, shoulders, low back, and fingers. R. 202–15. Dr. Howard noted Plaintiff was obese and recommended weight loss and an exercise regime; she also referred Plaintiff for mental health treatment. R. 215-16.

In June 2005, Plaintiff was referred to neurologist Lore Lisa Garten, M.D. for complaints of

numbness and tingling in the legs, pain in the back and hips, as well as "shaking" in the legs. R. 227–31. Dr. Garten ordered an MRI of the brain, to rule out demyelinating disease, and an EMG of the lower extremities to rule out neuropathy or radiculopathy. R. 227–31. Both tests were essentially normal. R. 227–31. At the request of the Social Security Administration ("SSA"), Plaintiff was examined by William Rogers, M.D., on March 16, 2005. R. 195–201. Plaintiff described back pain as present daily, aggravated by lifting, and numbness of both thighs aggravated by prolonged standing. R. 195–201. Upon examination, Dr. Rogers found Plaintiff to be obese, found a full range of motion in the cervical spine, but reduced motion in the lumbar spine, and a full range of motion in both hips, knees, and ankles. R. 197. A motor exam was 5/5 in all muscular groups in both upper and lower extremities, and Plaintiff was able to make a full grip. R. 197. In addition to obesity, Dr. Rogers assessed Plaintiff with a history of chronic low back pain and arthalgias with an unremarkable exam. R. 197.

Plaintiff also initiated mental health treatment in January 2004 at the Columbia County Mental Health Center for dysthymic disorder and polysubstance dependence in sustained full remission. R. 220–25. Plaintiff was treated by therapist Angela Schwarze, LMSW, and provided with medication by psychiatrist, Carl Rinzler, M.D. According to Dr. Rinzler, Plaintiff is noted to have completed a substance abuse course of treatment with Twin County Substance Abuse services as an outpatient and has described problems such anxiety, irritability, difficult concentrating, low tolerance to frustration, and sleep difficulties. R. 232–39. Finally, at the request of the State agency, Plaintiff underwent psychiatric evaluation by Joseph Bernier, Ph.D. on March 23, 2005. R. 185–94. At this

examination, Plaintiff described a history of anxiety, difficulty concentrating, and stated that he did not like to be outside or around people.

The relevant procedural history may be summarized as follows: Plaintiff filed an application for DIB and SIS benefits on January 8, 2004, alleging disability beginning December 1, 2001. R. 16. The application was denied initially and upon reconsideration. R. 29–34. Plaintiff timely requested a hearing before an Administrative Law Judge (ALJ). R. 16. On July 29, 2005, Plaintiff appeared, along with his attorney, in Albany, New York, and testified at a hearing before ALJ Thomas P. Zolezzi. R. 16, 244–90; Pl.'s Br. (Dkt. No. 6) at 2. On November 22, 2005, ALJ Zolezzi issued a written decision denying the application for benefits. R. 16–25. On November 30, 2005, Plaintiff filed a timely request for review by the Appeals Council. R. 10–12. The ALJ's decision became the Commissioner's final decision on August 23, 2006, when the Appeals Council denied Plaintiff's request for review. R. 4–6.

Plaintiff, through counsel, commenced this action on October 6, 2006. (Dkt. No. 1). The Commissioner interposed an Answer on January 10, 2006. Def.'s Answ. (Dkt. No. 5). Plaintiff filed a supporting Brief on February 1, 2007. Pl.'s Br.. The Commissioner filed a Memorandum in support on April 18, 2007. Mem. in Support. (Dkt. No. 10). Both parties have moved for judgment on the pleadings. Dkt. Nos. 6, 10.

## III. STANDARD OF REVIEW

District courts have jurisdiction to review claims contesting a final decision by the

Commission of Social Security denying disability benefits.  42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3).  In reviewing any such claim, a district court may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, it must defer to the Commissioner's determination unless the correct legal standards were not applied or the determination is not supported by substantial evidence in the record.  Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.").

"'Substantial evidence' requires more than a mere scintilla of evidence, yet less than a preponderance." Sanchez v. NLRB, 785 F.2d 409 (2d Cir. 1986).  It has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Poupore v. Astrue, 566 F.3d 303, 305 (2d Cir. 2009) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)).  Where evidence is susceptible to more than one rational interpretation, a district court may not substitute "its own judgment for that

of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984) (citation omitted); see also Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982); Barnett v. Apfel, 12 F. Supp. 2d 312, 314 (N.D.N.Y. 1998).

A district court has the authority to affirm, reverse, or modify a final decision of the Commissioner with or without remand. 42 U.S.C. § 405(g). Granting judgment on the pleadings is appropriate where the material facts are undisputed and where a court may make a judgment on the merits with reference only to the contents of the pleadings. Fed. R. Civ. P. 12(c); Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). Remand is warranted where there are gaps in the record and further development of the evidence is needed, or where the ALJ has applied an improper legal standard. See Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2004); Rosa v. Callahan, 168 F.3d 72, 82–83 (2d Cir. 1999); Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980). Remand is most appropriate where further findings or explanation will clarify the rationale for the ALJ's decision. Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996) (citation omitted). Additionally, remand is appropriate to allow for the consideration of additional new evidence which is material to the case and where good cause exists for the failure to submit that evidence in prior proceedings. Melkonyan v. Sullivan, 501 U.S. 89 (1991); Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983). By contrast, reversal and remand solely for calculation of benefits is appropriate when there is "persuasive proof of disability" and further development of the record would not serve any purpose. Rosa, 168 F.3d at 83; Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 644 (2d Cir. 1983);

Parker, 626 F.2d at 235.

**IV.    DISCUSSION**

  **A. Legal Standard**

Under the Social Security Act, an individual is disabled if he or she is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). The SSA has established a five-step sequential evaluation process to determine whether a claimant over the age of 18 is disabled under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520; see also Bowen v. Yuckert, 482 U.S. 137 (1987) (upholding the validity of this evaluation process). The plaintiff bears the burden of proof for the first four steps, and the Commissioner bears that burden in step five. See Bowen, 482 U.S. at 146; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).

20 C.F.R. § 404.1520 details the SSA's five-step analysis: in step one, the ALJ considers whether the claimant is currently engaged in substantial gainful activity.[2] If the claimant is not engaged in such activity, the ALJ advances to step two of the analysis and considers whether the claimant has a severe impairment meeting the "durational requirement"[3] and significantly limiting

---

[2] 20 C.F.R. § 404.1572(a) defines "substantial work activity" as "work activity that involves doing significant physical or mental activities." 20 C.F.R. § 404.1572(b) defines "gainful work activity" as "the kind of work usually done for pay or profit."

[3] The impairment must either be expected to result in death or must last for, or be expected to last for, a continuous period of at least 12 months. 20 C.F.R. § 404.1509.

his or her physical or mental ability to perform basic work activities. In making this determination, the ALJ does not consider the claimant's age, education, or work experience. Assuming the ALJ finds the claimant has one or more severe impairment(s), the ALJ continues to step three and determines whether the impairment(s) meets or equals any of those listed in Appendix 1, Subpart P of Regulation No. 4 ("the Listings"). If the ALJ concludes that the claimant's impairment(s) meets or equals one or more of the Listings, the claimant shall be deemed disabled. If the claimant's impairment(s) does not meet or equal one of the Listings, the fourth step of the evaluation requires the ALJ to assess whether, despite the claimant's severe impairment, the claimant's residual functional capacity ("RFC")[4] allows her to perform his or her past work. If the answer to that inquiry is that the claimant is unable to perform his or her past work, the fifth step asks the ALJ to determine, in light of the claimant's RFC and other vocational factors, including the claimant's age, education, and work experience, whether the claimant could perform other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1520; 20 C.F.R. § 404.1560; Heckler v. Campbell, 461 U.S. 458, 460 (1983).

### B. Analysis

#### 1. Commissioner's Decision

Employing the SSA's five-step analysis, the ALJ concluded that Plaintiff was not disabled

---

[4] RFC is defined as the most a claimant can do after considering the effects of all his or her medically determinable physical and mental limitations, including those not deemed "severe." See 20 C.F.R. 404.1545; SSR 96-8p.

within the meaning of the Social Security Act.  R. 16-25.  In reaching his ultimate conclusion, ALJ Zolezzi made the following findings: 1) claimant meets the nondisability requirements for a period of disability and DIB set forth in Section 216(i) of the Social Security Act, and is insured for benefits through December 31, 2001; 2) claimant has not engaged in substantial gainful activity since the alleged onset of disability; 3) claimant's chronic low back pain, anthralgias, obesity, depression, anxiety, and history of substance abuse are considered "severe"; 4) these severe impairments do not meet or medically equal one of the impairments in the Listings; 5) claimant's allegations regarding his limitations are not totally credible; 6) claimant has the RFC to perform work at a light level of exertion, with the ability to change position as needed every thirty to forty minutes, using a sit/stand option; in simple entry-level work, with simple decision-making; in a low stress environment with no planning, scheduling, report-writing, or supervising; with no high production quotas or multi-tasking; with little or no change in the work environment; and with limited interaction with the public or co-workers; 7) claimant is unable to perform any of his past relevant work; 8) claimant is a "younger individual" between the ages of 18 and 44; 9) claimant has a limited education; 10) claimant has no transferable skills from any past relevant work; 11) claimant has the RFC to perform a significant range of light work; 12) there are a significant number of jobs in the national economy that claimant could perform; and 13) claimant was not under a disability as defined in the SSA.  R. 24–25.

### 2. Plaintiff's Claim

Plaintiff contends that the Commissioner's decision should be reversed.  Pl.'s Br. at 6.

Plaintiff's main contention is that the ALJ "failed to discuss and thus completely ignored an important portion" of the report from the State Agency's psychologist, Joseph Bernier, Ph.D., regarding work-related mental abilities.  Pl.'s Br. at 4.  In particular, Plaintiff argues that the ALJ completely ignored Dr. Bernier's statement:

> I would have to say that he is severely limited in his ability to tolerate dealing with others in the work-place and markedly limited with respect to his ability to respond appropriately to ordinary work-pressures without becoming quite unstable and deteriorated in his functioning.  I do not see the Claimant's limitations as outlined here as a product of substance abuse.

Id.  Plaintiff also alleges that the ALJ gave inadequate weight to Plaintiff's self-report to Dr. Bernier, and that the ALJ misread the report of Plaintiff's treating psychiatrist, Carl Rinzler, M.D., as contradicting that of Dr. Bernier, instead of supporting it.  Pl.'s Br. at 5.

As discussed below, the Court finds that the ALJ applied the correct legal standard and his findings were supported by substantial evidence in the record.  Therefore, judgment on the pleadings in the Commissioner's favor is appropriate.

### 3. Five-Step Analysis

#### a. Substantial Gainful Activity

Step one of the five-step analysis requires the ALJ to consider "whether the claimant is currently engaged in substantial gainful activity."  20 C.F.R. § 404.1520.  The ALJ found that Plaintiff has not engaged in substantial gainful activity since December 31, 2001, the alleged onset date, a conclusion that is not in dispute.  R. 17, 24.

#### b. Severity of Impairment

If a claimant is not engaged in substantial gainful activity, the ALJ must next consider whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520.  The ALJ determined that Plaintiff had the following impairments considered "severe" under the Act: chronic low back pain, arthralgias, obesity, depression, anxiety, and history of substance abuse.  R. 18, 24.  This conclusion is not in dispute.

### c. Listed Impairment

If the claimant is not performing substantial gainful work and has a "severe impairment," the third inquiry is whether, based solely on the medical evidence, the claimant has an impairment which is listed in the Listings.  20 C.F.R. § 404.1520.  The ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments found in the Listings.  R. 18, 24.  This conclusion is not in dispute.

### d. Past Relevant Work

If the plaintiff's impairment does not correspond to one on the list, the fourth step is to inquiry whether, despite the plaintiff's severe impairment, he has the RFC to perform his past work. 20 C.F.R. § 404.1520.  The ALJ concluded that, in light of Plaintiff's RFC, Plaintiff is unable to perform any of his past relevant work, a conclusion that is also not in dispute.  R. 22, 24.

### e. Residual Functional Capacity

Once Plaintiff has established that he cannot perform his past relevant work, under the final step in the sequential analysis, the burden shifts to the SSA to demonstrate that other work exists in

significant numbers in the national economy that accommodates Plaintiff's RFC.  See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir. 1984).  This final step of the five-part inquiry is, itself, divided into two phases.  First, the ALJ must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience.  Second, the ALJ must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g), 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460 (1983).

The ALJ found that Plaintiff retained the RFC to perform a significant range of light work, as defined in 20 C.F.R. § 404.1567(b).  R. 22, 24.  Specifically, the ALJ concluded that Plaintiff possesses the RFC to

> perform work at a light level of exertion; with the ability to change position as needed, every 30 to 40 minutes, using a sit/stand option; in simple entry level work, with simple decision-making, but no complex decision-making; in a low stress environment, with no planning, scheduling, report-writing, supervising, high production quotas or multi-tasking; with little or no change in the work environment; and with limited interaction with the public or co-workers.

R. 24.

The ALJ further concluded that, considering Plaintiff's age (a "younger individual" as defined in 20 C.F.R. § 404.1463), education ("limited education" under 20 C.F.R. § 404.1464), and RFC (light work), there are jobs that exist in significant numbers in the national economy which Plaintiff can perform; in reaching this conclusion the ALJ employed the medical-vocational guidelines as a framework and considered the testimony of a vocational expert.  R. 23.  In particular,

the ALJ found that although Plaintiff's exertional limitations do not allow him to perform the full range of light work, he could perform jobs such as photocopy machine operator, collator, laundry sorter, addresser, and surveillance system monitor. R. 23, 282–84.

Plaintiff does not challenge the ALJ's finding that Plaintiff is capable of light work with a sit/stand option. Rather, Plaintiff objects to ALJ's RFC assessment as pertains to his mental abilities, specifically arguing that the ALJ did not properly consider the findings of Dr. Bernier. Pl.'s Br. at 5. Because Plaintiff only challenges the ALJ's RFC assessment as it relates to Plaintiff's mental impairments, the Court's discussion will be limited to the evidence on record as to those impairments. In addressing the limitations associated with Plaintiff's mental impairments, the ALJ "presumed borderline intellectual functioning, and . . . incorporated appropriate limitations in determinations of the claimant's [RFC]." The ALJ specifically considered Plaintiff's mental abilities and limitations as evaluated by Dr. Bernier and Plaintiff's treating psychiatrist, Dr. Rinzler. R. 19, 21.

### 4. Plaintiff's Objections to the ALJ's Decision

Plaintiff argues that reversal is appropriate because, in reaching the determination that Plaintiff is not "disabled" under the Act, the ALJ ignored a particular statement made by Dr. Bernier; gave inadequate weight to those portions of Dr. Bernier's assessment which relied upon Plaintiff's self-report; and mischaracterized the report of Plaintiff's treating psychologist, Dr. Rinzler as not fully supporting Dr. Bernier's findings. Pl.'s Br. at 5-6. Cummulatively, Plaintiff alleges, these errors resulted in the ALJ's unsupported and wrongful determination that Plaintiff is

capable of performing work that exists in the national economy and is not "disabled." The Court rejects each of these contentions.

### *a. Report of the Treating Psychiatrist*

The appropriate starting point for evaluating the ALJ's determination as to the limits Plaintiff's mental impairments pose is with Dr. Rinzler's report, not Dr. Bernier's, as the former is the treating psychiatrist. See Schisler v. Sullivan, 3 F.3d 563, 567-68 (2d Cir. 1993) (treating physician's opinion concerning the nature and severity of an impairment is entitled to controlling weight if it is supported by laboratory and diagnostic techniques and is not inconsistent with other substantial evidence); 20 CFR 416.1527(d)(2). The ALJ acknowledged the paramount importance of this treating source and accorded it "the greatest weight . . . to the extent the assessment is relevant to the issues concerning the ability to meet the basic mental demands of work-related tasks." R. 21.

The ALJ correctly notes that, with respect to social functioning, Dr. Rinzler reports Plaintiff has a "severe problem" only with regard to resolving conflicts appropriately; Dr. Rinzler deems Plaintiff's limitations "moderate" in the areas of effective communication, self advocacy, development and maintenance of social activities, and initiative. R. 21, 221. The ALJ took this opinion into account when, in determining whether work exists in the national economy that Plaintiff is capable of performing, he found that any such work must involve "limited interaction with the public and/or coworkers" and "little of no change in the work environment." R. 22-24.

Dr. Rinzler additionally notes that, with respect to activities of daily living, Plaintiff has a

severe problem maintaining competitive employment. R. 221.  The ALJ distinguished this latter assessment based on it being an "evaluation of activities of daily living rather than mental demands associated with work-related activities and as such [is] not accorded great weight in this consideration."  Plaintiff argues that this distinction is based solely on the difference in heading and that Dr. Rinzler's assessment of Plaintiff's ability to maintain employment should properly figure into the ALJ's assessment of whether Plaintiff's impairments prevent him from working in the national economy.  Implicit in Plaintiff's argument is the assumption that Dr. Rinzler's assessed Plaintiff as precluded from working; he did not.  Dr. Rinzler only states that Plaintiff has severe limits in maintaining competitive employment.  Notably, Plaintiff's therapist, who worked with Dr. Rinzler in filling out his assessment, reports that one of Plaintiff's assets and strengths is that he "[k]eeps attempting to seek & maintain employment." R. 233.  Additionally, at the time of the hearing, Plaintiff testified that he had just started a part-time job as a cook. R. 255.

Perhaps more importantly, "[o]pinions on some issues . . . are not medical opinions . . .but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability" 20 C.F.R. § 404.1527(e).  "Medical opinions are statements from . . . acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a).  Plaintiff's interpretation of Dr. Rinzler's assessment, that Plaintiff's limitations make him unable to perform any work, is not only

15

unsupported, it rests upon a non-medical opinion. 20 C.F.R. § 404.1527(e)(1) ("statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled "). As such, the ALJ was not required to give it any special significance. 20 C.F.R. § 404.1527(e)(3). Thus, the ALJ's distinction was entirely appropriate.

### *b. Dr. Bernier's Report*

Based on his "first-hand observations," Dr. Bernier found that

> [i]n terms of work-related mental abilities . . . Claimant should be capable of quite satisfactory functioning when dealing with short, simple instructions and tasks . . . . The Claimant's performance upon the KFAST Arithmetic test suggests that although he may struggle to understand complex instructions . . . he is capable of marginally satisfactory, but inconsistent or uneven performance . . . . I see no serious limitation in his ability to make judgments on work-related matters. With respect to work-related interpersonal pressures and the ability to cope with everyday work stresses the Claimant was capable or responding appropriately to me in the within the context of a one-on-one examination that was not geared to challenge or pressure him. To the extent that Claimant is accurately describing his history, . . . he is severely limited in his ability to tolerate dealing with others in the work-place and markedly limited with respect to his ability to respond appropriately to ordinary work-pressures without becoming quite unstable and deteriorated in his functioning.

R. 190-91. Plaintiff asserts that the ALJ's failure to mention this last statement regarding severe limitations in tolerating others in the workplace is cause for remand. Pl.'s Br. at 1.

An ALJ need not discuss every piece of evidence in the record, but cannot ignore a line of evidence that is contrary to the ultimate determination. Roat v. Barnhart, No. 8:07-CV-0021, 2010 WL 2326142, at *19 (N.D.N.Y. June 7, 2010) (Homer, *MJ*) (citing Schmidt v. Astrue, No. 07-CV-65, 2008 WL 1774381, at * 12 (N.D.Ind. Apr. 15, 2008). The ALJ's analysis was, in this

regard, entirely appropriate.

Admittedly, the ALJ did not expressly address the above statement; he did address Dr. Bernier's objectively supported assessment of Plaintiff's impairments including Plaintiff's "'marked limitations' in his ability to understand, remember and carry out detailed instructions." R. 21. In fact, his finding regarding Plaintiff's RFC corresponds to that assessment. R. 24. The ALJ also noted that portion of Dr. Bernier's assessment based upon Plaintiff's self-report, including "'marked limitations' in his abilities to interact appropriately with the public, supervisors, coworkers and respond appropriately to work pressure or changes in routine work setting." R. 21. The ALJ gave some weight to the Dr. Bernier's objectively measured assessment, and little weight to that based on Plaintiff's self-report. He reasoned that the latter need not receive much weight given that the ALJ had, himself, been able to assess Plaintiff's credibility when Plaintiff testified at the hearing. R. 21.

The ALJ did not improperly ignore an entire line of evidence, Roat, 2010 WL 2326142, at *19, he appropriately considered the opinion of the State agency psychiatrist, he explained the weight he gave to that opinion, and he reached a conclusion that is supported by substantial evidence in the record. The ALJ clearly considered how Plaintiff's limitations, including his ability to tolerate others in the workplace and changes in workplace routine, would affect his ability to perform work existing in the national economy; he also considered the effect of Plaintiff's presumed "borderline intellectual functioning." R. 22. This is clear from his conclusion that Plaintiff would be unable to perform work requiring much interaction with others or adapting to changes in routine; it is also clear from the hypotheticals posed to the vocational expert. R. 22-24, 286-88.

17

The regulations require that the ALJ consider the medical opinion provided by Dr. Bernier. See 20 C.F.R. §§ 404.1527(d).  He did so, and accounted for Bernier's objective in finding that Plaintiff is capable only of "simple entry level work, with simple decision making . . .in a low stress environment" involving "limited interaction with the public and/or coworkers" and "little of no change in the work environment."  R. 22.

An ALJ should generally give more weight to medical opinions supported by evidence, particularly medical signs and laboratory findings.  20 C.F.R. §§ 404.1512(d)(3).  Thus, it was entirely appropriate for the ALJ to differentiate between those portions of Dr. Bernier's report based on objective tests and those supported only by Plaintiff's subjective report.  Moreover, the ALJ explained that he gave "little weight" to the latter portion since it essentially involved a credibility assessment, something the ALJ had the opportunity assess himself.  Thus, he provided additional reasons for his treatment of Dr. Bernier's opinion.

Having found Plaintiff's testimony on this issue to be "for the most part, credible," the ALJ determined that Plaintiff is capable of performing work that exists in the national economy, and therefore, does not suffer from a disability as defined under the Act. R. 24-25.  As described above, this conclusion is supported by Rinzler and Bernier's assessments, see, e.g., R. 191, as well as the testimony of the vocational expert.  Finding substantial evidence on the record supporting the ALJ's conclusions, this Court finds no basis for upsetting his ultimate determination.

## V.     CONCLUSION

After carefully examining the administrative record, this Court finds substantial evidence

supports the ALJ's decision, including the objective medical evidence and supported medical opinions. It is clear to the Court that the ALJ thoroughly examined the record, accorded appropriate weight to all the medical evidence, including Plaintiff's treating source, and to Plaintiff's subjective claims when rendering his decision that Plaintiff is not disabled. The Court finds no reversible error. Because the Court further finds that substantial evidence supports the ALJ's decision, it is hereby

**ORDERED**, that Plaintiff's Motion for judgment on the pleadings is **DENIED**; and it is further

**ORDERED**, that Defendant's Motion for judgment on the pleadings is **GRANTED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED**.

DATED:	September 24, 2010
	Albany, New York

Lawrence E. Kahn
U.S. District Judge